**LAW OFFICES OF ZEV B. ZYSMAN**
A Professional Corporation
Zev B. Zysman, State Bar No. 176805
zev@zysmanlawca.com
15760 Ventura Boulevard, 16th Floor
Encino, CA 91436
Telephone: (818) 783-8836
Facsimile: (818) 783-9985

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

Attorneys for Plaintiff and the Proposed Class(es)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DONNA HAAS, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>TRAVELEX INSURANCE SERVICES INC., BERKSHIRE HATHAWAY SPECIALITY INSURANCE COMPANY, and DOES 1 through 100, inclusive,<br><br>   Defendants. | CASE NO.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.***;**<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE, SECTION 1770,** *et seq.***;**<br><br>**(3) UNJUST ENRICHMENT;**<br><br>**(4) MONEY HAD AND RECEIVED;**<br><br>**(5) CONVERSION**<br><br>**DEMAND FOR JURY TRIAL** |

1   Plaintiff Donna Haas ("Plaintiff") brings this action against Defendant
2   Travelex Insurance Services Inc., and Defendant Berkshire Hathaway Specialty
3   Insurance Company (collectively "Defendants") on behalf of herself, and all others
4   similarly situated, upon information and belief, except as to her own actions, the
5   investigation of her counsel, and the facts that are a matter of public record, as
6   follows:

7   **INTRODUCTION**

8   1.   This class action arises out of Defendants' unlawful and unfair business
9   practice of failing to refund unearned travel insurance premiums for trips that did
10  not occur due to cancellations resulting from coronavirus COVID-19 travel
11  restrictions that were imposed by various federal, state and local governments
12  throughout the United States.

13  2.   Plaintiff and other similarly situated insurance policyholders purchased
14  travel insurance policy plans from Defendant Travelex Insurance Services Inc.,
15  which was underwritten by Defendant Berkshire Hathaway Specialty Insurance
16  Company hereinafter the "Travel Insurance Plans").  The Travel Insurance Plans
17  provided reimbursement in the event of financial loss or hardship related to travel,
18  and cover a wide variety of perils associated with travel, including both *pre-*
19  *departure* risks, such as the possibility that a traveler will lose pre-paid
20  nonrefundable deposits or payments if a trip needs to be canceled prior to departure,
21  as well as risks that arise *exclusively post-departure*, such as interruption of a trip,
22  medical or dental emergencies during a trip, and baggage being lost, stolen or
23  damaged.

24  3.   The second category of coverages, post-departure, cover risks that only
25  arise *after* travel is underway and to which Defendants are not exposed unless and
26  until the insured parties *actually* travel ("Post-Departure Coverage(s)").   It is that
27  portion of the Travel Insurance Plan that is the focus of this action and that should

28

be reimbursed because Plaintiffs and the Class(es) paid for travel insurance that was never provided, and for which Defendants never assumed any risk, because the trips were canceled due to COVID 19.

4.     When an insured purchases a travel insurance plan from Defendants, he or she receives a "Confirmation of Coverage," which Defendants expressly incorporate into the Travel Insurance Plans Defendants underwrite.  The Confirmation of Coverage delineates the different policy benefits actually purchased by the insured through his or her particular Travelex Travel Insurance Plan, the coverage limits of each corresponding benefit, and the gross premium paid for the entire package of separate coverage options purchased.

5.     Defendants can easily determine the *pro rata* share of the gross premium attributable to each policy benefit—including Post-Departure Coverage—purchased by each insured under that person's specific travel insurance plan.

6.     The Travel Insurance Plans offered and sold by Defendants do not inform consumers that  Defendants are legally obligated  to refund any portion of the gross insurance premium that was paid in advance for the delineated post-departure coverages that were simply never provided to Plaintiff and the members of the Class(es) (defined below) as a result of trips that were cancelled due to COVID-19.

7.     During the Class Period (defined below), Plaintiff and members of the Class(es) purchased travel insurance from Defendants to cover risks that might have arisen *during* their trip.  However, due to COVID-19, since Plaintiff and the members of the Class(es) were prevented from actually departing on their trips, Defendants never actually bore the *post-departure* risks that Post-Departure Coverage was specifically intended to protect against.

8.     After learning of their trip cancellation, Plaintiff and other members of the Class(es) contacted Defendants for refunds of unearned insurance premiums

paid for trips that did not occur.  In response, Defendants systematically refused to refund *any* portion whatsoever of the gross premium paid for the purchased Travel Insurance Plans, and instead unjustly retained the entire premium paid.  At most, Defendants offered insureds a one-time date transfer of the policy to another trip at a later date no more than twelve (12) months of the original departure date or if more than twelve (12) months as long as certain guidelines are all met.  As addressed in detail below, given that the pandemic continues to wreak widespread havoc on the travel industry and global economy, this token gesture does not provide any meaningful value to Plaintiff and the Class(es).

9.     According to the American Academy of Actuaries Travel Insurance Task Force in its 2018 Report, insurers, such as Defendants, do not have any exposure to post-departure risks until the departure date.  See *Travel Insurance: An Actuarial Perspective,* AMERICAN ACADEMY OF ACTUARIES TRAVEL INSURANCE TASK FORCE, September, 2018 at 18.  Thus, Defendants' blanket refusal to return the unused and unearned premium to purchasers of Defendants' Travel Insurance Plans is unlawful and unfair under California law. (See https://www.actuary.org/sites/default/files/files/publications/TravelInsurance Monograph_09052018.pdf).  Such is this case here in light of the COVID-19 pandemic which resulted in widespread trip cancellations. At a minimum, Defendants are obligated to return the portion of the premium paid for Post-Departure Coverages because Plaintiff and the Class(es) paid that portion in exchange for Defendants' agreement to cover risks they never actually assumed because the Class(es)' trips never occurred. In essence, such premiums are unearned inasmuch as Defendants were never at risk of having to cover the perils of actual travel.

10.    Defendants have unjustly enriched themselves by retaining the unearned premiums for Post-Departure Coverages. Each member of the proposed

CLASS ACTION COMPLAINT

Class(es) have been similarly injured by Defendants' uniform misconduct, and is entitled to restitution of that portion of the gross premium that Defendants accepted in exchange for insuring against post-departure risks for which they never provided any coverage (i.e., assumed the specified risks) in return.

11.     Upon information and belief, thousands of Defendants' insureds in California, including Plaintiff, were victims of Defendants' deceptive, misleading, and unlawful acts and practices.  This deception will continue if Defendants are not enjoined from continuing their scheme.

12.     Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased a Travel Insurance Plan from Defendants in California and seek to recover unused and unearned insurance premiums paid to Defendants for trips cancelled due to COVID-19 travel restrictions.  Plaintiff seeks restitution and other appropriate equitable remedies, including an injunction for Defendants' violations of California's Business & Professions Code §§ 17200, *et seq.* (the "UCL"), the California Consumers' Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), and for unjust enrichment, money had and received, and conversion.

## <u>JURISDICTION AND VENUE</u>

13.     This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2) and (6). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least one of the members of the proposed Class(es) have a different citizenship from Defendants.

14.     The Central District of California has personal jurisdiction over the Defendants named herein because Defendants do sufficient business in the State of California, have sufficient minimum contacts with the State of California and/or otherwise intentionally avail themselves of the markets within the State of

California through the sale of Travel Insurance Plans within this District, and continue to employ the tactics detailed herein to render the exercise of jurisdiction by California courts and the application of California law to the claims of the Plaintiff permissible under traditional notions of fair play and substantial justice. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Defendants transact substantial business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims arose here.

15.     Plaintiff has filed a venue declaration concurrently herewith in pursuant to California Civil Code § 1780(d).

## THE PARTIES

**A**.     **Plaintiff**

16.     Plaintiff Donna Haas ("Haas") is a citizen of the State of California, at all times relevant to this action has resided in Los Angeles, California, and made the purchase alleged herein in Los Angeles.

**B.     Defendants**

17.     Defendant Travelex Insurance Services Inc. ("Travelex") is a Delaware corporation which is licensed to do, and is doing, business throughout the United States, with its principal office located in Omaha, Nebraska and its global headquarters located in London, England.  Travelex is one of the leading providers of travel insurance in North America.  Travelex is also part of the Travelex Group, which specializes in currency exchange.

18.     Defendant Berkshire Hathaway Specialty Insurance Company ("Berkshire") is a Nebraska corporation which is licensed to do, and is doing, business throughout the United States, with its principal place of business located in Omaha, Nebraska.  Berkshire sells and underwrites travel insurance in North America.

///

### C.   Doe Defendants

19.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 100, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.  Plaintiff will amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Does 1 through 100, when they have been ascertained, along with the appropriate charging allegations, as may be necessary.

20.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have been ascertained.  Each reference in this Complaint to "Defendants" is also a reference to all Defendants sued as Does 1 through 100.

### D.   Agency/Aiding And Abetting

21.     Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting within the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

22.     Plaintiff is further informed and believes, and on that basis alleges, that Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class(es), as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful

acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

23.     Accordingly, there exists, and at all times herein mentioned existed, a unity of ownership between each Defendant and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.  Adherence to the fiction of the separate existence of Defendants and each of them would under the circumstances set forth in this Complaint promote injustice.

24.     Whenever reference is made in this Complaint to any act of "Defendants," such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendants named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendants and did so while acting within the scope of their employment or agency.

## FACTUAL ALLEGATIONS

### A.     Allegations Related to Plaintiff

25.     On February 10, 2020, Plaintiff Donna Haas and her husband purchased a Viking River Cruise to travel between Nuremburg and Budapest, including airfare, with travel to begin on May 7, 2020 and to return on May 26, 2020. The total cost of the trip, including airfare, was $9696.00.  On February 10, 2020, Plaintiff also purchased an $889.00 Travel Insurance (Plan Policy Confirmation No. TBB166699), underwritten by Defendant Berkshire Hathaway Specialty Insurance Inc. and administered by Defendant Travelex Insurance Services Inc. through a travel business named InsureMyTrip.

26.     Plaintiff and her husband's trip was cancelled by Viking River Cruise on or around March 30, 2020 due to COVID-19.  Viking River Cruises issued a full refund of the trip cost totaling $9696.00, which thereafter appeared on Plaintiff's Capital One credit card which was used to purchase the trip and was posted on April 28, 2020.

27.     Plaintiff contacted InsureMyTrip on March 30, 2020 via telephone and email to request cancellation of Defendants' Travel Insurance Plan as the trip was cancelled.  Plaintiff indicated that she did not want a credit, but rather a full refund for the Travel Insurance Plan, as she and her husband were not planning to take any future trips in light of continued travel restrictions and uncertainty regarding the coronavirus.

28.     Additionally, on March 30, 2020, Plaintiff sent a letter to Defendants to request cancellation of the Travel Insurance Plan and a full refund of $889.00 because, without the trip occurring, Defendants never assumed the covered risks. Plaintiff also attempted to contact Defendants via telephone to request the refund.

29.     Moreover, on or around March 30, 2020, Plaintiff contacted Capital One to initiate a credit card dispute regarding the Travel Insurance Plan for $889.00 as no services were rendered by Defendants pursuant to the Travel Insurance Plan due to the trip cancellation.

30.     On April 2, 2020, Capital One sent Plaintiff a letter with an update regarding the disputed charge with Defendants.  Capital One indicated that her account was credited the $889.00 and that Capital One requested Defendants to provide a response to the disputed charge for the Travel Insurance Plan.

31.     On May 11, 2020, Capital One sent Plaintiff a letter with a further update based on documentation provided by Defendant Travelex.   Capital One indicated that Travelex provided information to support the transaction. Specifically, Travelex sent a letter to Capital One on April 6, 2020, wherein

1  Travelex took the position that Defendants' Confirmation of Coverage states that

2  "premiums are non-refundable after a 15-day review period."

3        32.     On at least three occasions, including on May 4, 11, and 13, 2020

4  Plaintiff attempted to contact Travelex via telephone and left voicemail messages,

5  but Travelex never responded.

6        33.     On May 18, 2020, Plaintiff sent another letter to Capital One reiterating

7  that Defendants did not provide the services under the Travel Insurance Plan as the

8  trip was cancelled by Viking River Cruises and fully refunded by Viking River

9  Cruises as reflected in the Capital One Credit Card Statement covering the period

10 April 6, 2020 to May 5, 2020.  Plaintiff attached to the letter a copy of the Viking

11 River Cruise Invoice and Capital One Credit Card Statement showing the full refund

12 for $9,696.00.  Moreover, Plaintiff reiterated that as soon as Viking River Cruises

13 notified her that the trip was cancelled, she called Travelex and requested a refund

14 for the Travel Insurance Plan since there was no trip any longer, and no service was

15 to be provided by Defendants.  Further, Plaintiff indicated that with regard to the

16 "15-day review period," Plaintiff had no way to know that the trip would be

17 cancelled due to COVID-19, and so it was impossible to cancel the Travel Insurance

18 Plan in that time period.

19       34.     On May 19, 2020, Capital One sent Plaintiff a letter indicating that no

20 credit would be issued for the Travelex charge and considered the dispute closed.

21       35.     On June 1, 2020, Plaintiff sent a final letter to Defendants in an effort

22 to receive a refund for the Travel Insurance Plan premium.  Plaintiff explained again

23 to Defendants that the trip was cancelled by Viking River Cruises, and that despite

24 multiple attempts to contact Defendants to seek a refund of the insurance premium,

25 there was no response.

26 ///

27 ///

28

CLASS ACTION COMPLAINT

**B.** **COVID-19**

36.     On January 20, 2020, authorities diagnosed the first official case of COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2") in the United States. Thereafter, COVID-19 spread widely and rapidly across the United States. By January 30, 2020, there were nearly 8,000 confirmed cases of COVID-19 worldwide.

37.     In response, the World Health Organization ("WHO") declared COVID-19 a "Public Health Emergency of International Concern." The next day, President Trump declared a public health emergency regarding COVID-19, and the U.S. State Department banned travel between the United States and China.

38.     COVID-19 spread silently throughout United States, steadily increasing its reach before its existence was detected. On February 29, 2020—the same day the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks—the State of Washington became the first state to declare a state of emergency due to COVID-19. It would not be the last to do so.

39.     On March 11, 2020, the WHO reclassified COVID-19 as a worldwide pandemic.  That same night, President Trump made a televised address during which he announced a moratorium on all flights from Europe (excluding Great Britain) for 30 days.  The ban was extended to Great Britain the very next day.

40.     The President declared a "National Emergency" two days later, and, on March 15, 2020, the Center for Disease Control ("CDC") recommended avoiding gatherings of 50 people or more. The next day, the U.S. federal government recommended avoiding groups of 10 people or more.

41.     By March 23, 2020 the United States had reported more confirmed cases of COVID-19 than any other country in the world.

42.    By the end of March, 2020 the governors of most states had declared states of emergency due to COVID-19, and state and local officials across the country had issued stay-at home orders that canceled public events, closed schools, and prohibited unnecessary travel.

43.    Over 132,000 Americans have died of COVID-19 as of the date of this filing, according to the CDC.[1]

44.    As a direct and proximate result of this unprecedented crisis, by March 2020, many insured trips, including Plaintiff's Viking River Cruise, were canceled. Trips insured by Defendants continued to be canceled in the months that followed.

45.    In short, COVID-9 has led to social distancing, sheltering-in-place, and efforts to "flatten the curve" which have separated loved ones from their relatives, workers from their co-workers, and further isolated those already in or at risk of further isolation.  It has decimated nationwide employment and caused widespread travel cancellations subject to travel restrictions, all to protect the health and welfare of the nation during this public health emergency.

46.    However, in the midst of the greatest public health and economic crisis in living memory, Defendants, which constitute a multi-billion dollar insurance enterprise, have sought to surreptitiously shift their economic losses onto their innocent policy holders, furthering the financial hardship endured by people across the country. Rather than refunding their policyholders, Defendants are unjustly retaining the entire premium paid even though Defendants were never at risk of having to cover the perils of actual travel following the COVID-19 trip cancellations.

///

///

---

[1]  See   https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited July 10, 2020).

## C.     Defendants' Travel Insurance Plans

47.     Defendant Travelex is one of the world's largest travel insurance providers. Travelers can purchase Travelex Travel Insurance Plans through a number of distribution channels and platforms, including from a travel agent (either online, traditional "brick-and-mortar" or on the telephone), the Travelex website, a travel service provider's own website or other web-based booking platforms offered by third parties.

48.     Defendant Berkshire Hathaway Specialty Insurance Company underwrites travel insurance policies sold by Travelex.

49.     Defendants' Travelex Travel Insurance Plans group together insurance policy protection for various risks and sell that protection in a pre-packaged bundle. Travelex Travel Insurance Plans can include some or all of the travel insurance protections offered by Defendants. Typically, the more perils covered by the Travel Insurance Plan, the more expensive is the gross premium for all the policy coverages combined within a single plan.

50.     Travel Insurance Plans sold by Defendants include at least some travel benefits that are applicable *exclusively* post-departure, meaning that Defendants are not at risk of having to cover the associated risks prior to commencement of actual travel by the insured.

51.     The Travelex Travel Website's "Travelex Travel Insurance Plans" section describes multiple plans, including the "Travel America," "Travel Basic," "Travel Select," "Flight Insure," and "Flight Insure Plus," each of which have single-trip coverage options.

52.     Defendants advertise their Travelex Travel Insurance Plans as being tailored for travelers facing different circumstances.

53.     When an insured purchases a Travel Insurance Plan from Defendants, he or she receives a "Confirmation of Coverage." The Travel Insurance Plan

underwritten by Defendants consists of the Travel Protection Plan Policy, which governs the terms and conditions for coverage when there is a sudden, unexpected problem or event before or during travel. The Confirmation of Coverage delineates the different policy benefits actually purchased by the insured through his or her particular Travelex Travel Insurance Plan, the coverage limits of each corresponding benefit, and finally, the gross premium paid for the entire package of separate coverage options purchased.

54.     Defendants can readily identify the *pro rata* share of the gross premium which is attributable to each policy benefit purchased by each insured under that person's specific Travel Insurance Plan.

55.     The Travel Insurance Plans offered by Defendants do not address how refunds are to be handled, such as Defendants' legal obligation to refund any portion of the gross insurance premium that was paid in advance for delineated Post-Departure coverages that were in fact never provided due to COVID-19 trip cancellations.

56.     Defendants' Confirmation of Coverage describes insurance provided against separately enumerated risks, each of which is detailed below. The insurance coverages provided are found in the Schedule of Benefits, and the Confirmation of Coverage attached to a policy holder's confirmation letter.  For instance, as illustrated below, the maximum limits per person for the "Travel Basic Plan," such as Plaintiff's Plan are as follows:

| Insurance Coverages Provided | Maximum Coverage Per Person |
|---|---|
| (1) Trip Cancellation | 100% of Insured Trip Cost |
| (2) Trip Interruption | 100% of Insured Trip Cost |
| (3) Trip Delay | $500 ($250/day) |

| (4) Missed Connection | $500 |
| --- | --- |
| (5) Baggage/Personal Effects | $500 |
| (6) Baggage Delay | $100 |
| (7) Emergency Medical & Dental Expense | $15,000 ($500 dental sublimit) |
| (8) Emergency Evacuation & Repatriation | $100,000 |
| (9) 24 Hour Accidental Death & Dismemberment | $10,000 |
| (10) Travel Assistance Services | Included |
| (11) Car Rental Collision Upgrade | None |
| (12) Accidental Death & Dismemberment Common Carrier Air Only Upgrade | None |

57.     Plaintiff's Confirmation of Coverage letter and Travel Protection Plan Policy are attached hereto as "Exhibit 1."

58.     The Policy language provides that "Trip Cancellation coverage will be effective at 12:01 a.m. (Standard Time) on the date following payment to the Company of any required plan cost.  The Policy language further provides that "All Other Coverages will begin on the later of: (a) 12:01 a.m. (Standard Time) on the Scheduled Departure Date shown on the travel documents; or (2) the date and time thee Insured starts his/her trip."

59.     Therefore, Defendants could neither have assumed the risks covered by, nor provided Plaintiff coverage for, Items 2-12 until May 7, 2020. However, well before that date Plaintiff's trip had been canceled by Viking River Cruise.

60.     The Class members' Travel Insurance Plans similarly enumerate different categories of risk.  In each case, trip cancellation is the only risk that attaches, and which Defendants cover, before the date of departure. In short, in each Travel Insurance Plan, Post-Departure Coverage begins only *after* Defendants receive the premium and (at minimum) the date of departure arrives.

61.     Although the policy fails to address whether Defendants will refund unearned, risk-free premiums when trips are canceled prior to departure, Defendants are obligated to return that portion of the gross premium that Plaintiff and the Class(es) paid for benefits *exclusively* covering post-departure risks that Defendants never assumed. Defendants had not earned these premiums, as they assumed no risk and provided no consideration in exchange for the premiums Plaintiff and the Class(es) paid for those benefits due to COVID-19 travel restrictions.

62.     The travel insurance underwriters use sophisticated risk calculation methods to estimate their risk exposure throughout the course of an insured's trip. Because there are distinct types of coverage with different starting dates that are combined for sale under the umbrella of each plan, Defendants can identify the *pro rata* share of the gross premium attributable to Post-Departure Coverages.[2]

63.     On or around April 28, 2020, Travelex announced that if an insured's trip or flight is cancelled due to COVID-19, government travel warning, restriction or ban, there would be no coverage under the Trip Cancellation/Trip Interruption of the Travelex Travel Insurance Plan.  Travelex simply suggested that insureds

---

[2] See *Travel Insurance: An Actuarial Perspective,* AMERICAN ACADEMY OF ACTUARIES TRAVEL INSURANCE TASK FORCE, September, 2018 https://www.actuary.org/sites/default/files/files/publications/TravelInsuranceMonograph_090520_18.pdf (explaining that when policies are exclusively covering post-departure risks such as medical costs and trip interruption, no premiums are earned during the pre-departure period).

contact their travel supplier to seek a refund or make alternate arrangements. Moreover, Travelex might allow a one-time date transfer for the traveler to apply the policy to a new trip at a later date no more than twelve (12) months after the original departure date or after more than twelve (12) months if certain guidelines are all met, including, (1) the traveler must pay the rates in effect at the time the new trip is booked, (2) the new trip dates must be applied to the policy within twelve (12) months of the original departure date, and (3) the new trip departure date is no greater than twenty-four (24) months from when the new travel dates are applied to the policy.[3]  As addressed in detail in this Complaint, given that the COVID-19 pandemic continues to wreak widespread havoc on the travel industry and global economy, this token gesture is unlikely to provide any meaningful value to Plaintiff and the Class(es).  Defendants have failed to issue *any* cash refunds to Plaintiff and members of the Class(es) for Post-Departure Coverages on trips canceled due to COVID-19.  Defendants' practice of failing to refund premiums paid for Post-Departure Coverage is systematic and uniform whenever an insured's trip is canceled before he or she departs and the trip begins.

## <u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>

64.    Plaintiff brings this action as a class action on behalf of herself, and all others similarly situated pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  The proposed Class(es) that Plaintiff seeks to represent is defined as follows:

65.    For claims based on violation of common law claims for conversion, unjust enrichment and money had and received:

---

[3] See "Coronavirus (COVID-19) Coverage Update, Travelex Insurance," https://www.travelinsurance.com/covid1919/?mobile-no (last visited July 10, 2020).

> All persons in the United States who, during the relevant statute of limitations period preceding the filing of this Complaint through the date of final judgment in this action (the "Class Period"), purchased travel insurance through Defendants and had their trips cancelled due to COVID-19 travel restrictions.

66.     For claims also based on common law violations and violations of the UCL and CLRA:

> All persons who, while in the State of California, during the four (4) year period preceding the filing of this Complaint through the date of final judgment in this action (the "Class Period"), purchased travel insurance through Defendants and had their trips cancelled due to COVID-19 travel restrictions.

67.     Excluded from the Class(es) are Defendants, their corporate parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest, any of their officers, directors, employees, or agents, the legal representatives, successors or assigns of any such excluded persons or entities, and the judicial officers to whom this matter is assigned as well as their court staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

68.     The members of the Class(es) are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff estimates that the Class(es) consists of thousands of members.  Moreover, Plaintiff alleges that the precise number of Class members, their identities, and their locations can be ascertained though appropriate discovery and records of Defendants and their agents.  Defendants keep extensive computerized records of their customers through, *inter alia*, customers' policies and coverages purchased, customer programs, and general marketing programs.

Defendants have one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including names, email and home mailing addresses, and telephone numbers, through which notice of this action could be disseminated to potential Class members in accordance with due process requirements.

69.    There are numerous questions of law and fact common to the Class(es) which predominate over any questions affecting only individual members of the Class(es).

70.    Among the questions of law and fact common to the Class(es) are, *inter alia*:

(a)    Whether, during the Class Period, Defendants as a matter of course and policy, retained unearned, risk-free premiums paid exclusively for coverage of post-departure perils, whenever the purchaser of a Travel Insurance Plan had their trip cancelled prior to his/her scheduled departure date due to COVID-19 restrictions;

(b)    Whether Defendants' Travel Insurance Plans address the entitlement of insureds to a partial refund of unearned, risk-free premiums paid exclusively for coverage of post-departure perils, whenever the purchaser of a Travel Insurance Plan had their trip cancelled prior to his/her scheduled departure date due to COVID-19 restrictions;

(c)    Whether Defendants are required to refund unearned premiums;

(d)    Whether, during the Class Period, Defendants' were unjustly enriched by their conduct;

(e)    Whether Defendants engaged in unfair or unlawful business practices under California law;

(f)    Whether Defendants have made false or misleading statements of fact concerning the reasons for, existence of, Post-Departure Coverage;

(g)    Whether Class members are entitled to damages and/or restitution; and,

if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class members as a result of the conduct alleged herein;

(h)     Whether an injunction is necessary to prevent Defendants from continuing to use false, misleading or illegal practices; and

(i)     Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

71.     <u>Typicality</u>:  As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of the members of the Class(es) and, like all members of the Class(es), arise from the same course of conduct undertaken by Defendants against members of the Class(es) as a whole. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class(es).

72.     <u>Adequacy</u>:  As required by Fed. R. Civ. P. 23(a)(4), Plaintiff is an adequate representative of the Class(es) because she is a member of the Class(es) and her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the Class(es) because she is not antagonistic to the Class(es).  Plaintiff has retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.

73.     <u>Superiority</u>:  As required by Fed. R. Civ. P. 23(b)(3), the nature of this action and the nature of laws available to Plaintiff and the Class(es) make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class(es) for the wrongs alleged because:

(a)     The individual amounts of damages involved, while not insubstantial, are such that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;

(b)     If each Class member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage since they would

be able to exploit and overwhelm the limited resources of each individual Class member with vastly superior financial and legal resources;

(c)     The costs of individual suits could unreasonably consume the amounts that would be recovered;

(d)     Proof of a common factual pattern that Plaintiff experienced is representative of that experienced by the Class(es) and will establish the right of each member of the Class(es) to recover on the cause of action alleged; and

(e)     Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

74.     Plaintiff and Class members have all similarly suffered irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct.  This action will provide substantial benefits to Plaintiff, the Class(es) and the public because, absent this action, Plaintiff and Class members will continue to suffer losses, thereby allowing Defendants' violations of law to proceed without remedy, and allowing Defendants to retain proceeds of their ill-gotten gains.

75.     All Class members, including Plaintiff, were exposed to one or more of Defendants' misrepresentations or omissions of material fact regarding the Travel Insurance Plans and existence of Post-Departure Coverage.  Due to the scope and extent of Defendants' consistent false and deceptive scheme, disseminated in a massive, years-long campaign to California consumers via print and on-line advertising and marketing, and the like, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class(es). In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Defendants' false and misleading scheme when purchasing Defendants' Travel Insurance Plans in California.

76.     Defendants have acted or refused to act on grounds generally applicable to the Class(es) as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class(es) as a whole.  As such, the systematic policies and procedures of Defendants make final injunctive relief or declaratory relief with respect to the Class(es) as a whole appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

## FIRST CAUSE OF ACTION

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

77.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

78.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

79.     The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – only that such practices occurred.

80.     Defendants are a "person" as defined by Business & Professions Code § 17201.

81.     As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff and members of the Class(es) have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unfair Prong

82.     Defendants' conduct violates the unfair prong of the UCL.

83.     An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided.  An act or practice also is unfair if it offends an established public policy or is immoral,

CLASS ACTION COMPLAINT

unethical, oppressive, unscrupulous or substantially injurious to consumers.  An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.  Defendants' conduct violates all of these definitions.

84.     As alleged above, Defendants engage and have engaged in a systematic business practice of intentionally misrepresenting the Travel Insurance Plans and existence of Post-Departure Coverage in California, refusing to disclose to consumers in the Confirmation of Coverage that Defendants are obligated to refund unearned, risk-free premiums when trips are canceled prior to departure, those which Plaintiff and members of the Class(es) paid for *exclusively* to cover post-departure risks that Defendants never assumed. Defendants had not earned these premiums, as they assumed no risk and provided no consideration in exchange for the premiums Plaintiff and members of the Class(es) paid for those benefits due to COVID-19 travel restrictions.

85.     Further, Defendants' acts and practices are unfair because they caused Plaintiff, and reasonable consumers like her, to falsely believe that they are receiving a benefit from Post-Departure Coverage that did not, in fact, exist. Defendants intended for Plaintiff and members of the Class(es) to rely on the expectation that Defendants would refund unearned, risk-free premiums when trips are canceled prior to departure.  As a result, insureds, including Plaintiff, reasonably perceived that they were receiving benefits from Post-Departure Coverage that never existed. This perception has induced reasonable purchasers, including Plaintiff, to purchase Defendants' Travel Insurance Plans, which they otherwise would not have purchased.

86.     The gravity of the harm to members of the Class(es) resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Defendants for engaging in such deceptive acts and practices.  By

CLASS ACTION COMPLAINT

committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of California Business & Professions Code §§ 17200, *et seq*.

87.    As a direct and proximate result of Defendants' acts and practices, Plaintiff and members of the Class(es) have suffered injury in fact and have lost money or property as a result of purchasing Defendants' Travel Insurance Plans.

88.    Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiff and members of the Class(es).  As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all members of the Class(es), and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff and members of the Class(es) may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### **Unlawful Prong**

89.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

90.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

91.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

92.    The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

93.    Defendants' Travel Insurance Plans that Plaintiff and members of the Class(es) purchased from Defendants are a "service" within the meaning of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1770, *et seq*.

94.     As detailed in Plaintiff's Second Cause of Action below, by engaging in the conduct set forth herein, Defendants violated and continue to violate Cal. Civ. Code § 1770(a)(5), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

95.     As a direct and proximate result of Defendants' acts and practices, Plaintiff and members of the Class(es) have suffered injury in fact and have lost money or property as a result of purchasing Defendants' Travel Insurance Plans.

96.     As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and members of the proposed Class(es). Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their false, misleading and deceptive conduct.

97.     Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiff and members of the Class(es). As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all members of the Class(es), and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.

98.     Defendants' acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.   Plaintiff and members of the Class(es) may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

///

///

**Fraudulent Prong**

99.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

100.    Defendants' Travel Insurance Plans and advertising materials containing Post-Departure Coverage were "fraudulent" within the meaning of the UCL because they deceived Plaintiff, and were likely to deceive members of the Class(es), into believing that Defendants were offering Travel Insurance Plans with premiums for Post-Departure Coverages that would  be refunded in the event they were never provided to Plaintiff and the members of the Class(es) as a result of trips that were cancelled due to COVID-19 travel restrictions.

101.    This perception induced reasonable purchasers, including Plaintiff, to buy such Travel Insurance Plans from Defendants, which they otherwise would not have purchased had they known that there would be no refund of their gross insurance premium that was paid in advance for the delineated Post-Departure Coverages that were simply never provided to Plaintiff and the members of the Class(es) as a result of trips that were cancelled due to COVID-19 travel restrictions.

102.    Defendants' acts and practices as described herein have deceived Plaintiff and were highly likely to deceive ordinary members of the consuming public.

103.    Defendants are and were under a duty to disclose to consumers the truth about consumers' entitlement to refunds of premiums paid for Post-Departure Coverages in the event trips were cancelled due to COVID-19 travel restrictions because:

(1)    Defendants are and were in a superior position to know the true state of facts about consumers' entitlement to refunds of premiums paid for Post-Departure Coverages in the event trips were cancelled due to COVID-19 travel restrictions;

(2)  Defendants have as made partial disclosures about the extent of consumers' entitlement to refunds of premiums paid for Post-Departure Coverages in the event trips were cancelled due to COVID-19 travel restrictions;

(3)  Defendants have actively concealed and failed to disclose to consumers their entitlement to refunds of premiums paid for Post-Departure Coverages in the event trips were cancelled due to COVID-19 travel restrictions; and,

(4)  Members of the Class(es), including Plaintiff, have suffered actual loss due to Defendants' concealment and false representations.

104.  The facts concealed and not disclosed by Defendants to Plaintiff and members of the Class(es) are material. Specifically, in deciding to purchase Defendants' Travel Insurance Plans, Plaintiff relied on Defendants' misleading and deceptive practices in connection with the sale of Defendants' Travel Insurance Plans.  Each of these factors played a substantial role in Plaintiff's decision to purchase a Travel Insurance Plan, and Plaintiff would not have purchased the subject Travel Insurance Plan in the absence of Defendants' misrepresentations and omissions.  Accordingly, Plaintiff suffered monetary loss as a direct result of Defendants' practices described herein.

105.  As a direct and proximate result of Defendants' acts and practices, Plaintiff and members of the Class(es) have suffered injury in fact and have lost money or property as a result of purchasing Defendants' Travel Insurance Plans.

106.  As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and members of the proposed Class(es). Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their false, misleading and deceptive conduct.

107.   Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiff and members of the Class(es). As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all members of the Class(es), and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiff and members of the Class(es) may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CAUSE OF ACTION
### Violation of California Consumers Legal Remedies Act
### (Cal. Civil Code §§ 1750 *et seq.*)

108.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

109.   This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1770, *et seq.* (the "CLRA").

110.   Plaintiff and each member of the proposed Class(es) are "consumers" within the meaning of California Civil Code § 1761(d).

111.   Defendants' sale of Travel Insurance Plans to Plaintiff and members of the Class(es) were "transactions" within the meaning of California Civil Code § 1761(e). Defendants' Travel Insurance Plans purchased by Plaintiff and members of the Class(es) are "services" within the meaning of California Civil Code § 1761(b).

112.   As described herein, California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

113.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5), because Defendants' conduct constitutes

unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants represented that consumers would receive a benefit from Post-Departure coverages even if their trips were cancelled due to COVID-19 travel restrictions. Defendants also violated and continue to violate Section 1770(a)(5), because Defendants failed to disclose to consumers that Post-Departure coverages would have no value to consumers if their trips were cancelled due to COVID-19 travel restrictions prior to departure, and failed to disclose that consumers would not receive a refund of their gross insurance premiums that were paid in advance for the delineated Post-Departure coverages that were never provided as a result of trips that were cancelled due to COVID-19 travel restrictions.

114.   Plaintiff relied on Defendants' false representations in deciding to purchase a Travel Insurance Plan from Defendants.  Plaintiff and members of the Class(es) suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Travel Insurance Plans absent Defendants' false representations of benefits they expected from premiums paid for Post-Departure coverages, and Defendants' omission of a warning that consumers would not receive a refund of their gross insurance premiums that were paid in advance for the delineated Post-Departure coverages that were never provided as a result of trips that were cancelled due to COVID-19 travel restrictions;   (b) they would not have purchased Travel Insurance Plans on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Travel Insurance Plans based on Defendants' misrepresentations and omissions; and (d) Defendants' Travel Insurance Plans did not have the characteristics, benefits, or quantities as promised. As a result of these acts and practices, Plaintiff and members of the Class(es) suffered damage in that they spent money that they would not have otherwise spent absent Defendants' unlawful and misleading acts and practices.

115.   Pursuant to Section 1782(a) of the CLRA, on July 10, 2020, Plaintiff's Counsel, on behalf of Plaintiff Haas, served Defendants by United States certified mail, return receipt requested, with notices of Defendants' particular violations of the CLRA and requested that Defendants identify victims, notify victims and remedy their illegal conduct within 30 days.

116.   Plaintiff has requested that Defendants timely respond to the CLRA demand notice and presently seeks only injunctive relief pursuant to the CLRA.  If Defendants fail to fully, completely and timely comply with Plaintiff's demand letters, Plaintiff will amend this Complaint to seek actual and punitive damages, as appropriate, under the CLRA.  Under California Civil Code §1782(d), after the commencement of an action for injunctive relief, and after compliance with the provisions of Section 1782(a), Plaintiff may amend her Complaint without leave of court to include a request for damages.

117.   Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other relief that the court deems proper.

118.   Civil Code section 1781 provides that Plaintiff may pursue this case as a class action.

119.   Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

120.   Plaintiff is entitled to attorney fees pursuant to Civil Code section 1780(e).

///
///
///

**THIRD CAUSE OF ACTION**

**Unjust Enrichment**

121.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

122.   Plaintiff and members of the Class(es) conferred benefits on Defendants by paying, and being charged, premiums for Post-Departure Coverages that were simply never provided to Plaintiff and the members of the Class(es) as a result of trips that were cancelled due to COVID-19 travel restrictions.

123.   Defendants have knowledge of such benefits.

124.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and members of the Class(es)' unearned premiums. Retention of those moneys under these circumstances is unjust and inequitable because Defendants are retaining its customers' unearned premiums despite trips that were cancelled due to COVID-19 travel restrictions.  Put simply, no coverage of any post-departure peril is ever transferred or assumed by Defendants in this cancellation scenario, and therefore, such coverage is wholly illusory since the *sine qua non* of post-departure travel insurance (irrespective of the type and level which is purchased within any particular Travel Insurance Plan) is *actual travel* on the insured trip.

125.   Never having been placed at risk, Defendants' retention of these premiums is also unjust because they have provided no consideration in return for their retention of these premiums. Further, there is no legal justification or excuse for Defendants' systematic and willful misconduct. The Travel Insurance Plans affirmatively state that any coverage for perils besides "trip cancellation" never even begin until the scheduled departure date.  Specifically, the Policy states:  "All Other Coverages will begin on the later of: (a) 12:01 a.m. (Standard Time) on the Scheduled Departure Date shown on the travel documents; or (2) the date and time

the Insured starts his/her trip."  Therefore, even the express terms of Defendants'
own-drafted policy language make clear that, when an insured's trip is cancelled
prior to the departure date, no peril is being insured by Defendants besides those
perils covered by "trip cancellation."

126.   The Travel Insurance Plans nowhere set forth the alleged right of
Defendants to withhold refund of any premiums previously paid for post-departure
benefits in the event that an insured's trip is cancelled due to the COVID-19 travel
restriction.  These misrepresentations and charges caused injuries to Plaintiff and
members of the Class(es) because they would not have paid Defendants' premiums
had the true facts been known.

127.   Because Defendants' retention of the non-gratuitous benefits conferred
on it by Plaintiff and members of the Class(es) is unjust and inequitable, Defendants
must pay restitution to Plaintiff and members of the Class(es) for their unjust
enrichment, as ordered by the Court.

## FOURTH CAUSE OF ACTION

### Money Had and Received

128.   Plaintiff re-alleges and incorporates by reference the allegations
contained in the preceding paragraphs as though fully set forth herein.

129.   Defendants received money in the form of premiums that were
intended to be used for the benefit of Plaintiff and members of the Class(es), those
premiums were not used for the benefit of Plaintiff and the Class(es), and
Defendants have not given back or refunded the wrongfully obtained money and
unearned premiums to Plaintiff and members of the Class(es).

130.   Defendants obtained money in the form of premiums that were
intended to be used to provide coverage insuring against post-departure risks for
which they never provided any coverage (*i.e.*, assumed the specified risks) for
Plaintiff and the  members of the Class(es). However, Defendants have retained all

of the premiums despite that trips were cancelled due to COVID-19 travel restrictions prior to departure.

131.   Plaintiff's demand for a refund from Defendants for those premiums she paid to insure against post-departure risks for which Defendants never provided any coverage was rejected by Defendants.

## FIFTH CAUSE OF ACTION

### Conversion

132.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

133.   Plaintiff and members of the Class(es) had a right to receive a refund of monies paid for Travel Insurance Plans for post-departure risks.

134.   Defendants intentionally retained the full amount of the Plaintiff's and members of the Class(es)' premiums despite have demanded that Defendants return their property.

135.   Plaintiff and members of the Class(es) did not consent to Defendants' retaining such premiums after trips were cancelled due to COVID-19 travel restrictions.

136.   Plaintiff and members of the Class(es) were harmed through Defendants' retention of premiums paid for their Post-Departure Coverages; Defendants' conduct was a substantial factor in causing Plaintiff and members of the Class(es)' harm.

137.   Plaintiff and Cass members are entitled to recover the amount each paid to Defendants for their *pro rata* share of the gross insurance premiums which are attributable to Post-Departure Coverages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class(es), prays for relief and judgment against Defendants as follows:

1.    For an order certifying this matter as a class action and designating Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel;

2.    For an order awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and members of the Class(es) as a result of their unlawful, unfair, and fraudulent business practices described herein;

3.    For appropriate injunctive relief as permitted by law or equity;

4.    For an order directing Defendants to engage in a corrective advertising campaign;

5.    For an award of attorneys' fees as authorized by statute including, but not limited to, the provisions of California Civil Code § 1780(e), California Code of Civil Procedure § 1021.5, as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

6.    For costs of the suit incurred herein;

7.    For prejudgment interest at the legal rate;

8.    For leave to amend the Complaint to conform to the evidence produced at trial; and

9.    For such other and further relief as the Court may deem proper.

///

///

///

///

///

///

///

///

///

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial by jury for Plaintiff and the Class(es) as to all issues so triable.

Dated: July 10, 2020      Respectfully submitted,

             POMERANTZ LLP

By: _____
             Jordan L. Lurie
             Ari Y. Basser

Dated: July 10, 2020      Respectfully submitted,

             LAW OFFICES OF ZEV B. ZYSMAN
             A PROFESSIONAL CORPORATION

By: /s/ Zev B. Zysman _____
             Zev B. Zysman

             Attorneys for Plaintiff
             Donna Haas and the Proposed Class(es)

CLASS ACTION COMPLAINT