**O**

# United States District Court
# Central District of California

DONNA HAAS, on behalf of herself and all others similarly situated,

              Plaintiff,

    v.

TRAVELEX INSURANCE SERVICES INC., BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, AND DOES 1 through 100, inclusive,

              Defendants.

Case No. 2:20-cv-06171-ODW (PLAx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [36]**

## I.    INTRODUCTION

Plaintiff Donna Haas brought this putative class action against Defendants Travelex Insurance Services, Inc. and Berkshire Hathaway Specialty Insurance Co. seeking to recover "unearned travel insurance premiums for trips that did not occur due to cancellations resulting from [COVID-19] travel restrictions."  (Compl. ¶ 1, ECF No. 1.)  Defendants move for judgment on the pleadings.  (Mot. J. on Pleadings ("Motion" or "Mot."), ECF No. 36.)  For the reasons that follow, the Court **GRANTS in part and DENIES in part** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

On February 10, 2020, Haas and her husband purchased a Viking River Cruise, which was to take place in mid-May 2020.   (Compl. ¶ 25.)   Haas concurrently purchased a travel insurance policy for $889, underwritten by Berkshire Hathaway and administered by Travelex.  (*Id.*)  On March 30, 2020, the cruise line cancelled the trip due to COVID-19 and refunded the cost of the cruise.  (*Id.* ¶ 26.)

When Haas purchased her Policy, she received a Confirmation of Coverage delineating the twelve policy benefits she purchased, the coverage limits of each benefit, and the gross premium she paid for the entire package of benefits.  (*Id.* ¶ 53.) The first of these eleven categories is Trip Cancellation coverage.  (*Id.* ¶¶ 53, 56.) Trip Cancellation coverage is "effective at 12:01 a.m. (Standard Time) on the date following payment to the Company of any required plan cost." (*Id.* ¶ 58.)  The parties have used the term "pre-departure coverage" to refer to this benefit, and the Court adopts this convention herein.

Haas was also covered for eleven additional potential occurrences, each with its own expressly defined maximum coverage limit.  (*Id.* ¶ 56.)  These eleven additional coverages were to "begin on the later of: (a) 12:01 a.m. (Standard Time) on the Scheduled Departure Date shown on the travel documents; or (2) [sic] the date and time thee [sic] Insured starts his/her trip." (*Id.* ¶ 58.)  The parties have used the term "post-departure coverage" to refer to these benefits, and the Court likewise adopts this convention herein.

The gravamen of Haas's case is her contention that, based on these provisions of coverage, Defendants could neither have assumed the risks covered by, nor provided Haas coverage for, the eleven post-departure coverages until travel took place.  (*Id.* ¶ 59.)  Haas contends that, because her trip was cancelled before departure, Defendants assumed no risk of post-departure losses and therefore did not earn the premiums Haas had paid for post-departure coverages.  (*Id.* ¶ 61.)  Defendants have offered certain concessions but have failed to issue Haas a refund for post-departure

coverage on her cancelled trip.  (*Id.* ¶ 63.)  Haas alleges Defendants have wrongfully retained the unearned post-departure premium.

On July 10, 2020, Haas filed the operative Complaint against Defendants asserting five claims for: (1) Violation of California Unfair Competition Law ("UCL"), Business and Professions Code section 17200, *et seq.*; (2) Violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1770, *et seq.*; (3) Unjust Enrichment; (4) Money Had and Received; and (5) Conversion.  (*See* Compl. ¶¶ 77–137.)  Defendants move for judgment on the pleadings on all five claims.  (Mot. 1–2.)[2]

### III.   LEGAL STANDARD

After the pleadings are closed, but within such time as to not delay the trial, any party may move for judgment on the pleadings.  Fed. R. Civ P. 12(c).  The standard applied to a Federal Rule of Civil Procedure ("Rule") 12(c) motion is essentially the same as that applied to Rule 12(b)(6) motions; a judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." (citations omitted)); *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

When ruling on a motion for judgment on the pleadings, a court should construe the facts in the complaint in the light most favorable to the plaintiff, and the movant must clearly establish that no material issue of fact remains to be resolved.  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).   However,

---

[2] A review of the pleadings and papers in this action gave rise to questions regarding this Court's subject matter jurisdiction.  Accordingly, the Court ordered Haas to supplement her jurisdictional allegations.  (Order to Show Cause, ECF No. 49.)  Haas complied and the Court is satisfied, at this pleading stage, with the jurisdictional showing.  (*See* Pl.'s Resp., ECF No. 56.)  Therefore, the Court **DISCHARGES** the Order to Show Cause.

"conclusory allegations without more are insufficient to defeat a motion [for judgment on the pleadings]." *Id.*

If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Defendants move for judgment on the pleadings as to each of Haas's five claims. The Court considers each claim in turn.

### A. Claim One: Violation of the UCL

Haas's Claim One is for violation of the California UCL. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145 (N.D. Cal. 2013) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). The "unfair" prong "creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014.)

Plaintiff asserts that it would be unfair and unlawful for Defendants to keep the unearned premiums, and that Defendants have worked a fraud upon Plaintiff and others by accepting premiums without informing customers that Defendants did not intend to refund post-departure premiums in the event unforeseen circumstances forced the cancellation of the flight. (*See* Compl. ¶¶ 82–88 (unfair); ¶¶ 89–98

(unlawful); ¶¶ 99–107 (fraudulent)).  Defendants argue Claims One fails because the Complaint does not establish a plausible UCL claim; the Complaint does not satisfy the heightened standard for fraud; and the CLRA cannot serve as a predicate offense to a UCL violation.  (Mot. 16–20.)  Moreover, in opposition to all five claims, including Claim One, Defendants argue that the equitable relief contemplated by the claim is unavailable because Plaintiff has an adequate remedy at law.  (Mot. 21.)

Claim One is sufficiently pleaded.  The Complaint does not compel the conclusion that Plaintiff has an adequate remedy at law, and at the very least, Plaintiff plausibly claims that insurance law requires Defendants to return the post-departure premiums in this case, making out a claim under the 'unfair' or 'unlawful' prong of the UCL.  Because the UCL claim is sufficiently pleaded under the 'unfair' prong, the Court does not address whether a CLRA violation may support Plaintiff's UCL claim, and the Court need not address whether the Complaint satisfies the heightened standard for fraud.

*1.*     *Adequate Remedy at Law*

Defendants argue that, because Claim One is for equitable relief, Haas must plausibly allege that she lacks an adequate remedy at law.  (Reply 10, ECF No. 43.)  The Ninth Circuit recently emphasized this requirement in *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020).  In *Sonner*, the Ninth Circuit affirmed the dismissal of a UCL claim where the sum the plaintiff sought in restitution as a full refund of the purchase price was the very same sum she sought as compensatory damages for the same wrong.  *Id.* at 844.

Here, Haas seeks not only restitution by way of her UCL claim, but also a prospective injunction directing Defendants to provide refunds to Plaintiff and the class, and to cease the taking and keeping of unearned premiums.  (Compl. ¶ 107, Prayer ¶ 3.)  This injunctive relief is not an available remedy at law; moreover, its presence in the Complaint distinguishes this case from *Sonner*.  *See* 971 F.3d at 842 ("Injunctive relief is not at issue . . . .")  Accordingly, Haas has sufficiently pleaded an

inadequate remedy at law.  *See Zeiger v. WellPet LLC*, --- F. Supp. 3d ---, 2021 WL 756109, at *21–22 (N.D. Cal. 2021) (finding "that monetary damages for past harm are an inadequate remedy for the future harm [at which] an injunction under California consumer protection law is aimed").

Defendants argue that Haas lacks Article III standing to pursue prospective injunctive relief because Haas has alleged that she does not intend to travel any time soon.  (Mot. 22.)   To establish standing to assert a claim for injunctive relief, a plaintiff must "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way.'"  *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941-JSW, 2019 WL 5690632, at *2 (N.D. Cal. Aug. 26, 2019) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).

Defendants' standing argument does not, at this early stage, bar Haas from pursuing injunctive relief.  Haas has alleged that she will not travel any time soon due to COVID-19; she has not alleged that she will never again travel or seek to purchase travel insurance from Defendants.  (*See* Compl. ¶ 27.)   From the Complaint a plausible inference arises that Haas could, once travel resumes, find herself in the same situation again and similarly harmed by uncertainty over whether Defendants would or will refund the unearned portion of travel insurance premiums.  *See Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[B]ecause this consumer has already voted with her wallet, we know that she is the most likely to be injured in the absence of an injunction, not the least."). The Ninth Circuit has recognized that this uncertainty is a compensable harm.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018) ("[U]nless the manufacturer or seller has been enjoined from making the same representation, [the] consumer . . . won't know whether it makes sense to spend her money on the product." (quoting *Lilly*, 2015 WL 1248027, at *4)).   A plausible inference of

Article III standing arises from the Complaint, and the Motion will not be granted on this basis.

### 2.    Merits of UCL Claim

By way of Claim Two, Haas alleges that Defendants' retention of the post-departure premiums constitutes unfair or unlawful conduct under the UCL. Haas's theory is plausible under established California insurance law.

California's insurance industry is regulated by an "entire state code" which provides for an insured's right to rescind an insurance contract and receive a refund. *Williams v. Kapilow & Son, Inc.*, 105 Cal. App. 3d 156, 164 (1980). California Insurance Code Section 481(a) provides that unless the insurance contract otherwise provides, an insured person whose policy is canceled, rejected, surrendered, or rescinded is entitled to a return of his or her premium if the insurer has not been exposed to any risk of loss. Relatedly, Section 481.5 provides that "[w]henever a policy other than a policy of personal lines insurance terminates for any reason, or there is a reduction in coverage, the gross unearned premium shall be tendered to the insured . . . ." And Section 483 provides that "[a] person insured is entitled to a return of the premium . . . [w]hen the contract is voidable on account of facts, of the existence of which the insured was ignorant without his fault," or "[w]hen, by any default of the insured other than actual fraud, the insurer did not incur any liability under the policy." *Williams*, 105 Cal. App. 3d at 164 (citing California Insurance Code Sections 481, 481.5, and 483).

The law of other jurisdictions is in accord. "If an insurer assumes no risk in a contract for insurance, then the insurer has suffered no bargained for detriment, and in the absence of that consideration the insured's premium must be returned." *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-CV-362, 2019 WL 1932763, at *3 (D. Neb. May 1, 2019) (first citing *Kan. City Coll. of Osteopathic Med. v. Emp'rs' Surplus Lines Ins. Co.*, 581 F.2d 299, 301–02 (1st Cir. 1978); and then citing *Young Am., Inc. v. Union Cent. Life Ins. Co.*, 101 F.3d 546, 548 (8th Cir. 1996)); *Autumn Ridge, L.P.*

1   *v. Acordia of Va. Ins. Agency, Inc.*, 613 S.E.2d 435, 439 (Va. 2005); *see also*

2   14 Williston on Contracts § 41:21 (4th ed. 1990) ("[W]hen the risk never attaches, the

3   reason for requiring a surrender of the premium by the insurer is apparent. Thus, if

4   there was a failure or breach of a condition precedent, the insurer never assumed any

5   risk of loss, and never earned any part of the premium.").  On the other hand, "an

6   insured may not have any part of his premium returned once the risk attaches, even if

7   it eventually turns out that the premium was in part unearned." *Bolden v. Blue Cross*

8   *& Blue Shield Ass'n, Inc.*, 848 F.2d 201, 209 (D.C. Cir. 1988); *Anderson*, 2019 WL

9   1932763, at *3 (same) (first citing *Euclid Nat'l. Bank v. Fed. Home Loan Bank*,

10   396 F.2d 950, 951 (6th Cir. 1968); and then citing *Fleetwood Acres v. Fed. Housing*

11   *Admin.*, 171 F.2d 440, 442 (2d Cir. 1948)); 14 Williston on Contracts § 41:21 ("If the

12   risk has attached, the insured has received consideration for the premium, and if by the

13   insured's own fault, or by chance, the conditional promise of the insurer need not be

14   performed, still, no part of the premium can be recovered.")

15          The question is whether the risk associated with the post-departure coverages

16   would have attached at the moment of departure, as Haas urges, or at the moment the

17   plan was purchased, as Defendants urge.  Haas quotes from and cites to a September

18   2018 publication by the American Academy of Actuaries which concludes that

19   premiums associated with post-departure risks are not earned during the pre-departure

20   period.  (Compl. ¶ 9 (citing Am. Acad. of Actuaries Travel Ins. Task Force, *Travel*

21   *Insurance: An Actuarial Perspective* (2018).)  Defendants, for their part, argue that

22   Haas is confusing the date that the risk attached with the date that a post-departure

23   loss can occur.  (Mot. 3–4.)  Defendants point out that, immediately following Haas's

24   purchase of the policy, any number of pre-departure events could have occurred which

25   would have increased Defendants' post-departure liability.  (*Id.*)  Defendants'

26   argument, implied if not stated, is that, because they are exposed to the downside risk

27   of pre-departure events increasing post-departure liability, they should also be able to

28

reap the benefits when pre-departure events decrease (or, in this case, altogether eliminate) post-departure liability.  (*See* Mot. 12.)

Haas's allegation in paragraph fifty-eight is key.  Haas alleges the eleven post-departure coverages did not "begin" until the later of (1) 12:01 a.m. on the Scheduled Departure Date on the travel documents, or (2) the date and time the insured starts their trip.  Haas never started her trip due to COVID-19.  Thus, Hass's post-departure coverages did not ever "begin."  And when, as here, an unforeseen event prevented a trip from happening weeks before it was to take place, and where the policy provides that coverage does not "begin" until the trip takes place, whether the trip was a condition precedent to the attachment of the risk of one or more post-departure covered events occurring is not an issue that resolves itself from the pleadings alone.  Plaintiff's allegations are sufficient to create a plausible inference that the risk associated with one or more of the eleven categories of post-departure liability did not attach until departure.  That being the case, Haas has stated a claim.

The district court in *Anderson* reached the same conclusion on a very similar set of facts.  The cancellations in *Anderson* were not due to COVID-19, and were of flights, not cruises, but the court had before it the same essential question: whether the traveler had stated a claim "for damages regarding the defendants' refusal to return the pro rata share of her travel insurance premium that can be attributed to post-departure risks."  2019 WL 1932763, at *1.

The district court answered this question in the affirmative.  The court noted that, as here, the operative policy "designates pre-departure and post-departure coverages as discrete risk categories that do not take effect contemporaneously."  2019 WL 1932763, at *3.  Instead, in both *Anderson* and here, pre-departure coverage is "effective upon receipt of payment, but post-departure coverage is not, in all cases, effective upon receipt of payment."  *Id.*  On these allegations the *Anderson* court denied the defendant's motion to dismiss, concluding that it was "reasonable to infer that the defendants did not agree to assume post-departure risks until the post-

departure coverages took effect, which, according to the insurance certificate, would ordinarily be the date and time the covered trip actually begins." *Id.*  The same insurance principles supporting the plaintiff's claim in *Anderson* support Haas's claim in this case and lead to the same conclusion.

Given that Haas plausibly alleges that established insurance law requires a return of the post-departure premiums, it would be either unfair or unlawful (or both) for Defendants to retain these premiums when the departure event was prevented from occurring through no fault of either party.    Thus, Haas has adequately alleged Defendants' violation of the California UCL under either the "unfair" or the "unlawful" prongs.

Given that Claim One is viable on this basis, the Court need not address whether any CLRA violation supports a UCL claim under the "unlawful" prong.  The Court also need not reach whether Haas alleged a UCL violation under the 'fraudulent' prong.  Moreover, since only claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b), Defendants' arguments regarding Haas's failure to meet these heightened requirements do not defeat her UCL claim. *See Moore v. Mars Petcare US, Inc.,* 966 F.3d 1007, 1019 n. 11 (9th Cir. 2020) ("Rule 9(b) requirements may not even be necessary, given that a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence."); (Mot. 16–19).

Defendants' Motion is **DENIED** as to Claim One.

**B.    Claim Two: Violation of the CLRA**

Haas's Claim Two is for violation of the California CLRA.  The CLRA declares unlawful a variety of unfair methods of competition and unfair or deceptive acts or practices used in the sale or lease of goods or services to a consumer.  Cal. Civ. Code § 1770(a).   Haas alleges that Defendants' practice of retaining unearned post-departure premiums violates California Civil Code Section 1770(a)(5), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a

person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

Of the several arguments Defendants mount in opposition to Claim Two, the Court need address only one: that the CLRA does not apply to claims based on insurance transactions. (Mot. 20.)  This argument is meritorious.  In the Ninth Circuit, insurance is neither a "good" nor a "service" within the meaning of the CLRA. *Hennessy v. Infinity Ins. Co.*, 358 F. Supp. 3d 1074, 1081 (C.D. Cal. 2019) (citing *Civ. Serv. Emps. Ins. Co. v. Superior Court,* 22 Cal. 3d 362, 376 (1978)); *see also Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009) (holding that, because "life insurance is not a 'tangible chattel,' it is not a 'good'" or "a 'service'" as those terms are defined in the CLRA).  Thus, Haas cannot state a CLRA claim.

Haas argues the travel insurance she purchased is distinguishable because it included many components.  (Opp'n 18–19, ECF No. 42.)  But each of the components of the travel insurance Haas purchased was itself a type of insurance; Haas purchased no additional non-insurance services which might support a CLRA claim.  Haas further argues that the Court should not necessarily treat travel insurance in the same way as other types of insurance that courts have held do not invoke the CLRA.  (*Id.*)  But "the California Supreme Court has not differentiated between types of insurance" in excluding insurance from the CLRA, and this Court is "unconvinced" by Haas's argument for recognizing this distinction.  *Hennessy*, 358 F. Supp. 3d at 1081.

Defendants' Motion is **GRANTED** as to Claim Two.  As the claim is necessarily based on provision of insurance, and as the law with respect to insurance-based CLRA claims is clear, the second claim is dismissed without leave to amend.  *See Lund v. Cowan*, --- F.4th ---, 2021 WL 2965447, at *7 (9th Cir. 2021) (affirming district court's denial of leave to amend where the court saw no way for the plaintiff to "plead around" a dispositive defense).

## C.     Claim Three: Unjust Enrichment

Haas's Claim Three is for unjust enrichment and is based on the same essential theory: that, because Haas's trip was cancelled before it ever began, no post-departure risk ever attached, and Defendants have unjustly retained post-departure premiums that were not earned.  (*See* Compl. ¶¶ 121–127.)  Defendants again argue, albeit in this slightly different context, that Plaintiff has an adequate remedy at law and is therefore barred from asserting unjust enrichment.  (Mot. 21.)  Defendants also argue that they have not unjustly retained anything.  (Mot. 11–12.)  Neither argument defeats Claim Three at the pleading stage.

### 1.     *Adequate Remedy at Law*

Defendants argue that Claim Three is equitable in nature and that Haas must therefore plausibly allege that she lacks an adequate remedy at law.   (Reply 10.)  Defendants rely on *Sonner* for support, but that case considered UCL and CLRA claims, not an unjust enrichment claim.  *See Sonner*, 971 F.3d at 844.  Moreover, the Court is unpersuaded that *Sonner* compels dismissal of this equitable claim at the pleading stage.   *Sonner* had a unique procedural posture; the plaintiff had dismissed her state law damages claim on the proverbial eve of trial to force her $32,000,000 class action claim to trial by bench rather than by jury.  *Id.* at 837.  The case cannot be read as reversing a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation.  *See Cabrales v. Castle & Cooke Mortg., LLC*, No. 1:14-cv-01138-MCE-JLT, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015) ("[A] litigant is entitled to assert inconsistent theories of recovery on both legal and equitable grounds at the pleadings stage.").  Indeed, "[t]his Court is aware of no basis in California or federal law for prohibiting the plaintiff[] from pursuing [her] equitable claims in the alternative to legal remedies at the pleadings stage." *Lomeli v. Jackson Hewitt, Inc.*, No. 2:17-CV-02899-ODW (KSx), 2018 WL 1010268, at *7 (C.D. Cal. Feb. 20, 2018) (quoting *Adkins v. Comcast Corp.*, No. 16-CV-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017)); *Cabrales*,

2015 WL 3731552, at *3 (collecting cases and noting the "ampl[e] support[]" for this proposition in the Ninth Circuit).  Haas may well be able to show that no contract-based remedies are available to her, thereby opening the door to equitable remedies.  Hass's claim of a lack of adequate legal remedy is plausible and she should not be denied the opportunity to make this showing.  The Motion will not be granted on this basis.

### 2.    Express Contract

Defendants argue that an unjust enrichment claim must be dismissed when the parties have an enforceable express contract.  (Mot. 10.)  "[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  The *Paracor* court also formulated this rule as precluding recovery "for events arising out of the subject matter" of a valid, enforceable written contract.  *Id.* (quoting *Chrysler Cap. Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991)).

Here, the Court cannot conclude that this argument defeats Claim Three as a matter of law.  It is not necessarily the case that Haas's Policy "defin[ed] [her] right" to a refund for unforeseen trip cancellations, or that the parties' insurance contract "govern[ed]" the subject matter of such cancellations in a way that precludes quasi-contractual relief.  *Paracor*, 96 F.3d at 1167.  Defendants argue that, because the policy provides for one and only one method of obtaining a refund, the Court should read the contract as a complete statement of the parties' rights with respect to refunds.  (Mot. 10–11.)  But this is not the only reasonable reading of the Policy.  The sole refund provision in the policy is a "Fifteen Day Look" provision that allows an insured to receive a refund for any reason within fifteen days.  (Policy 1, ECF No. 1-1.)  This is a rather different matter from the question of refunds due to unexpected or unforeseen events that make performance of the contract impossible.  Notably,

Defendants have not pointed to any part of the Policy that expressly states that the Fifteen Day Look refund is the only type of refund available.  (*See generally* Policy.)

Thus, one reasonable reading of the Policy is that the Policy does not say anything at all about Haas's right to a refund in the event of an unforeseen event that is the fault of neither party.  Accordingly, it would be reasonable in this case to read the absence of a refund provision for unforeseen, no-fault events as implying that such refunds are indeed available according to applicable insurance law.  To dismiss the unjust enrichment claim at this stage would be to improperly deprive Haas of the opportunity to make this showing.

### 3.   *Merits of Unjust Enrichment Claim*

More generally, Defendants argue that they have not been unjustly enriched. To recover for unjust enrichment, a plaintiff must plead and prove that "(1) a benefit was received; (2) the recipient was cognizant of that benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient."  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1015 (C.D. Cal. 2015).

Haas's claim for unjust enrichment is well pleaded.  As discussed, established insurance law requires return of the premium when the risk has not attached.  *Emp'rs' Surplus Line*, 581 F.2d at 301–02.  Here, whether the trip itself was a condition precedent to risk attaching is an issue that does not resolve itself from the pleadings alone.  Should the factfinder answer this question in the affirmative, then Defendants' retention of the post-departure premiums is unjust.

Defendants' Motion is **DENIED** as to Claim Three.

### D.   **Claim Four: Money Had and Received**

Haas's Claim Four is for Money Had and Received and is very similar to Claim Three.  Haas alleges that Defendants retained post-departure premiums for which no risk ever attached, and accordingly, she is entitled to a refund of those premiums.  (*See* Compl. ¶¶ 128–131.)

Defendants argue that this claim fails because Haas has an adequate remedy at law, but this argument fails for the same reasons discussed in the context of Claim Three.  Defendants further argue that Claim Four is "indistinguishable" from Claim Three and that it should be dismissed on that basis.  (Mot. 13–14.)

"A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff."  *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1280 (C.D. Cal. 2015) (quoting *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011)).  The plaintiff must allege that the defendant "has received money which belongs to [the plaintiff], and which in equity and good conscience should be paid over to the [the plaintiff]."  *Id.*

Claim Four is well pleaded for largely the same reasons as Claim Three.  First, the Court permits Haas to plead this equitable remedy at this phase because, based on Hass's allegations, it is plausible that she may have no adequate remedy at law. Second, if the risk is found not to have attached until the day of departure, then insurance law would require Defendants to refund the unearned premiums.  The premiums would constitute money received by Defendants which equity and good conscience should require Defendants to pay over to Haas.

Defendants argue in the Reply brief that Plaintiff has failed to allege an identifiable sum of money that was converted.  (Reply 6.)  They point out that the $889 Plaintiff paid for travel insurance is not the sum that Plaintiff seeks, and that Plaintiff has merely alleged that she seeks some unspecified portion of this amount. (*Id.*)

This argument is unavailing.  While "mere estimates" are insufficient, *Johnson v. GMRI, Inc.*, No. CV F 07-0283JODLB, 2007 WL 1490819, at *6 (E.D. Cal. May 21, 2007), the law does not require plaintiffs to plead the exact dollar amount of a sum certain at the pleading phase.  Instead, it is sufficient to plead facts showing that the amount sought is *capable of* being reduced to a sum certain.  *See Natomas*

*Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010) (finding sufficient a claim for conversion where the plaintiffs alleged entitlement to sums of money capable of identification, without alleging specific dollar amounts); *United Studios of Self Defense, Inc. v. Rinehart*, No. 8:18-CV-01048-DOC-DFM, 2019 WL 1109682, at *9 (discussing *Natomas* and finding that plaintiffs "need only describe the property . . . sufficiently that defendants can answer and develop a defense" for a conversion claim to survive a motion to dismiss).

Haas alleges that "Defendants can readily identify the *pro rata* share of the gross premium which is attributable to each policy benefit purchased by each insured under that person's specific Travel Insurance Plan." (Compl. ¶ 54.) This is a plausible allegation that the Court accepts as true in ruling on this Motion. *Twombly*, 550 U.S. at 555. Thus, the amount Plaintiff seeks is calculable to a sum certain based on these *pro rata* identifications and this is sufficient at the pleading stage.

Defendants' Motion is **DENIED** as to Claim Four.

**E.    Claim Five: Conversion**

Haas's Claim Five is for conversion. (*See* Compl. ¶¶ 132–37.) "[C]onversion is the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1161 (9th Cir. 2017) (internal quotation marks omitted). "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1100 (N.D. Cal. 2014) (citing *Burlesci v. Petersen,* 68 Cal. App. 4th 1062, 1066 (1998)). "A specific and identified amount of money can form the basis of a conversion claim . . . ." *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1024 (N.D. Cal. 2008).

To state a claim for conversion, a plaintiff "must allege . . . entitle[ment] to immediate possession at the time of conversion." *See United Energy Trading, LLC v.*

*Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1194 (N.D. Cal. 2016).  "[A] mere contractual right of payment, without more, will not suffice."  *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997).  Indeed, courts in the Ninth Circuit have not hesitated to dismiss claims for conversion when the claim amounted to no more than a demand for reimbursement of a payment.  *See Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1094 (S.D. Cal. 2016) ("[T]he crux of Plaintiffs' claim is that Defendant charged them for services they otherwise would not have used, or . . . overcharged them. But as the California Court of Appeal has noted, there is no support for the position that an overcharge, without more, gives rise to a claim for conversion."); *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020) ("An obligation to pay money, like Plaintiff's claim for partial tuition reimbursement, is insufficiently tangible to qualify as property under these facts."); *Nguyen v. Stephens Inst.*, No. 20-cv-04195-JSW, --- F. Supp. 3d ---, 2021 WL 1186341, at *5–6 (N.D Cal. 2021) (finding no claim for conversion "for breach of duties that merely restate . . . contractual obligations," where student sought partial refund from college for not providing in-person education during COVID-19);

Here, the conversion claim fails because Haas's claim amounts to no more than one for reimbursement of a payment.  As alleged, when Haas's cruise was cancelled and Defendants refused to refund her post-departure premiums, Haas gained a right to reimbursement of a portion of the funds she has paid, and no more.  But case law makes clear that a mere right of reimbursement is an insufficiently tangible property right to support a conversion claim.  *Zerin*, 53 Cal. App. 4th at 452.  Thus, no claim for conversion lies under the facts as alleged.

Although it appears unlikely that Haas can state a claim for conversion, the Court cannot conclude that *any* amendment would be futile.  Accordingly, Defendants' Motion is **GRANTED** as to Claim Five, with leave to amend.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034–35 (9th Cir. 2008)

(reversing denial of leave to amend when record indicated plaintiffs "could have made several factual amendments and clarifications" to cure the pleading).

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Judgment on the Pleadings.  (ECF No. 36.)  Specifically, the Motion is **GRANTED with leave to amend** as to Claim Five, **GRANTED without leave to amend** as to Claim Two, and **DENIED** as to all other claims.

If Haas chooses to amend her pleadings, she shall file a First Amended Complaint ("FAC") in conformance with this Order no later than **twenty-one (21) days** from the date of this Order.  If Haas files a FAC, Defendants shall file a response no later than **fourteen (14) days** from the date Haas files the FAC.  If Haas does not file a FAC, Defendants shall respond to the Complaint no later than **fourteen (14) days** from the date the FAC would have been due.


**IT IS SO ORDERED.**


August 19, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**